

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-2486
Re: Under the two factual situations stated, is the refinery in Texas a "distributor" of motor fuel, making a "first sale" of such motor fuel, so as to be liable for the excise tax levied by Article 7065a, Vernon's Annotated Revised Civil Statutes of Texas, or will such transactions be clothed with immunity from state taxation under the Commerce Clause of the Federal Constitution.

By your letter of July 25, 1940, you submit for the opinion of this department the two following questions, which we quote from your letter:

"A refinery in the State of Texas either by telephone, telegraph, or by its agent in the State of Colorado, sells a truck load of motor fuel to a dealer in the State of Colorado. (At one time the transaction is initiated by the purchaser in Colorado and the sale is completed upon the efforts and initiative of the purchaser. The next sale emanates from the refinery and is completed upon the efforts of the refinery.) The dealer sends his truck to the Texas refinery for the motor fuel and returns it to his place of business in the State of Colorado.

"Is the refinery of this motor fuel required to pay the State tax, or is the refinery authorized to deliver the motor fuel to the Colorado purchaser tax free, if he keeps the required records showing

the details of the transaction as exported motor fuel?

"A person living in the State of Texas operates and maintains filling stations in the State of Colorado. He also operates filling stations and is a dealer in motor fuel in Texas. He desires to purchase motor fuel from a refinery in the State of Texas and transport it, in his own trucks, to his place of business in the State of Colorado. By agreement with the refinery the motor fuel is billed to the place of business in Colorado but is transported to the State of Colorado in the trucks belonging to the person living in Texas.

"Is the refinery required to pay the tax on motor fuel so billed to the customer in Colorado, or may it sell the motor fuel tax free as exported motor fuel by keeping the proper records?"

A proper determination of the above questions turns not so much upon whether the transportation of motor fuel from Texas into Colorado is interstate commerce, under the facts given, so as to bring the instant case within the protection of the Commerce Clause of the Federal Constitution, and the decisions concerning same, but rather turns upon whether a taxable "first sale" transpired in Texas prior to the beginning of any possible interstate commerce movement, so as to accrue a tax against the refineries involved.

In this latter respect, Section 1 (o) of Article 7056a, Vernon's Annotated Revised Civil Statutes of Texas, hereinafter cited as the Motor Fuel Tax Law of Texas defines "distributor" as follows:

"'Distributor' shall mean and include every person in this State who refines, manufactures, produces, blends or compounds motor fuel, or in any other manner acquires or possesses motor fuel and makes first sale of the same in this State; and it shall also include every person in this State who ships, transports or imports any motor fuel into this State and makes the first sale of same in this State."

"First sale" as used in the foregoing definition and in other portions of the Motor Fuel Tax Law, is defined by Section 1 (d) thereof as follows:

"'First Sale' shall mean and include the first sale, distribution or use in this State of motor fuel refined, blended, imported into, or in any other manner produced in, acquired, possessed or brought into this State."

Section 2 (a) of the Motor Fuel Tax Law causes the excise tax in question to accrue upon a "first sale" as hereinabove defined, by providing "the said tax shall accrue and be paid as hereinafter provided upon the first sale in Texas."

Section 2 (b) of said Act declares the legislative intent and purpose that said tax accrual shall be at the source of the motor fuel in Texas by providing: "The tax shall accrue on the first sale so that a single tax only will be collected on the same gallon of motor fuel, it being intended to impose the tax at its source in Texas, or as soon thereafter as such motor fuel may be subject to being taxed."

From the foregoing provisions it is readily apparent that the controlling issue before us is whether or not a "first sale" is constituted by the transactions described in your letter so as to constitute the refinery in question a "distributor" of motor fuel in Texas, and therefore liable for the tax which is caused to accrue upon the "first sale" of motor fuel even though the person or dealer purchasing same subsequently carries it beyond the confines of the State of Texas so as to stamp the transportation with the character of interstate commerce. With the issue thus limited, our opinion should not be construed as determining whether or not interstate commerce is present in the instant case by reason of the transportation of motor fuel from Texas to Colorado.

Although the involved issue of interstate commerce is thus read out of the case, there remains the equally complex and difficult question of what constitutes a sale of personal property. General definitions and principles governing this matter have been repeatedly laid down by the courts but each individual case must rest upon its own peculiar facts and circumstances to determine if, when and where a sale of personal property is finally consummated. However, in approaching the instant question, we must bear in mind that the

Honorable George H. Sheppard, Page 4

Legislature of Texas has elected to define a "first sale", as related to the accrual of the motor fuel tax, and such statutory definition must supersede, insofar as inconsistent, the commonly accepted definition of a sale in the commercial sense. While delivery of the subject matter is one of the principal determinants of the completion of a sale, as the term is ordinarily understood and defined, we think, from a consideration of the foregoing statutory provisions and definitions, that actual delivery of the motor fuel to the purchaser in Texas, constitutes and completes a taxable "first sale" and, in fact, is the sine qua non to such "first sale."

In each instance described in your letter, delivery of the motor fuel involved was made directly by the refinery in Texas to the purchaser in Texas. In the first instance, the purchaser, although purporting to be a resident of the State of Colorado, was actually in Texas at the time of the delivery of the motor fuel, by and through his agent, who took delivery in purchaser's truck at the loading rack of the Texas refinery. In the second factual situation, both parties to the transaction are resident citizens of Texas. The motor fuel was delivered into the trucks of the purchasing dealer at the loading facilities of the Texas refinery and was eventually transported to the State of Colorado.

It is our opinion that each of these transactions is a "first sale", and constitutes the refinery in each case a "distributor" of motor fuel in this State, within the statutory definition of each of said terms, above quoted. Said "first sale" was consummated in each instance within the borders of Texas, the purchaser taking delivery of the motor fuel in his own trucks, either personally or by agent. Title to the motor fuel doubtless passed at that time, and this is the controlling test of a sale of personal property, in either the statutory or commercial sense. The fact that in the first case, negotiations for the sale were begun sometimes by the purchaser and sometimes by the refinery or seller and were handled by telephone or telegraph, and, in the second instance, that the motor fuel was billed to the place of business in Colorado by agreement, although properly to be considered in determining whether the sale transpired in Texas or Colorado, does not, in our opinion, outweigh the determinative fact that the subject matter of the sale changed hands between seller and purchaser in Texas by actual delivery between parties who were in the State at the time.

To hold otherwise would uphold form rather than substance, and defeat the declared purpose of the Legislature "to impose the tax at its source in Texas," upon the "first sale," accompanied by delivery. To treat the entire transaction as an interstate transaction, rather than a "first sale" in Texas, merely upon the intention of the parties to create such an interstate transaction, supported by formal bookkeeping entries, or upon the mere declaration of the purchaser that he intended to transport the products outside the State of Texas, would be a prolific source of tax evasion and subterfuges.

We are not unmindful of the requirement of Section 2 (c) of the Motor Fuel Tax Law that "no tax shall be imposed on any motor fuel, the imposing of which would constitute an unlawful burden on interstate commerce, and which is not subject to be taxed under the Constitution of the State of Texas and the United States." But we say that interstate commerce, if it does exist in the instant case, does not commence until a time subsequent to the consummation of a taxable "first sale" in Texas between the refinery and the purchaser, and it is settled law that a state may tax property or privileges prior to the inception of interstate commerce.

However, if the instant case does not fall within these principles of taxation, it may be pointed out that no unconstitutional burden is occasioned here by the levy and collection of the tax from the refinery, because Section 2 (c) of the Act provides that "If any distributor, or other person, shall export or lose by fire or other accident, any motor fuel, so that the same may never be made use of within this state, after the tex has been paid on such motor fuel, claim for refund may be made in the manner hereinafter provided, or as the Comptroller may direct." Thus, the purchaser in each of the cases cited by you will have the benefit of the foregoing refund provision for taxes paid under this opinion, upon motor fuel allegedly going into interstate commerce.

Trusting the foregoing fully answers your inquiry, we are

APPROVED AUG 27, 1940.

*Grover Sellers*

FIRST ASSISTANT
ATTORNEY GENERAL

PMN:rw

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Pat M. Neff, Jr.*

Pat M. Neff, Jr.
Assistant